IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:24-CV-19-D

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
          v.                       )          **ORDER**
                                   )
J.D. COLESON,                      )
                                   )
                    Defendant.     )

On April 17, 2024, the United States of America ("United States" or "plaintiff") filed a complaint against J.D. Coleson ("Coleson" or "defendant") alleging trespasses, encroachments, and nuisances on its real property [D.E. 1]. The United States seeks declaratory relief, ejectment, monetary damages, and permanent injunctive relief. See id. On April 23, 2024, the United States moved for a preliminary injunction [D.E. 4] and filed a memorandum in support [D.E. 5]. Coleson did not respond. As explained below, the court grants the United States' motion for a preliminary injunction.

I.

In 1913, the United States acquired in fee simple the Albemarle and Chesapeake Canal ("the canal") and adjoining land from the private company that built the canal. See Compl. [D.E. 1] ¶ 8. The canal connects the Albemarle Sound to the Chesapeake Bay. See id. Five miles of the canal bisect Currituck County, North Carolina, at the unincorporated township of Coinjock, North Carolina. See id. The United States' deed to the canal and adjoining land ("the deed") is registered with the Currituck County Register of Deeds. See id. at ¶ 8 & n.1; [D.E. 1-1] (the deed). The deed conveyed, among other property, the portion of the canal and adjacent land located in

Coinjock, Currituck County, North Carolina, north of U.S. Route 158, where Old Coinjock Canal Road meets the Atlantic Intracoastal Waterway, at coordinates 36.343138°N, -75.952503°W ("the U.S. property"). See Compl. ¶ 10; [D.E. 1-1, 1-2].

The Atlantic Intracoastal Waterway is a 1,000-mile inland waterway along the Atlantic Coast that runs through canals, natural inlets, saltwater rivers, bays, and sounds. See Compl. ¶ 9. The Atlantic Intracoastal Waterway allows for commercial and recreational watercraft to travel along the Atlantic Coast without the hazards of traveling on the open ocean. See id. The United States Army Corps of Engineers ("the Corps") manages the canal as part of the Atlantic Intracoastal Waterway. See id. at ¶ 8.

In August 2022, an individual told the Corps that someone had placed a boat, vehicles, and other personal property on the U.S. property. See id. at ¶ 11. Corps employees visited the U.S. property and learned that Coleson had placed at least two cars, a truck, a motorcycle, debris, and other personal items on the property. See id. at ¶ 12; [D.E. 1-3]. The Corps employees also discovered that a wooden dock had been built on the U.S. property, and Coleson was mooring a boat there. See Compl. ¶ 12; [D.E. 1-3]. Coleson had also placed "No Trespassing" and "Private Property" signs on the U.S. property. See Compl. ¶ 12; [D.E. 1-3].

On August 17, 2022, a Corps employee called Coleson and told him that the United States owned the U.S. property and that Coleson needed to remove his personal property from the U.S. property. See Compl. ¶ 14. Coleson agreed to do so within 60 days. See id. By February 15, 2023, Coleson had not removed his personal property from the U.S. property, and the Corps sent a letter to Coleson to remind him of his obligation to do so. See id. at ¶¶ 15–16. Coleson failed to comply with the February 2023 letter. See id. at ¶ 17. In late 2023, the Corps referred the matter to the United States Attorney's Office for the Eastern District of North Carolina. See id.

2

On March 5, 2024, a Deputy U.S. Marshal went to the U.S. property, found Coleson, and observed that Coleson's personal property and improvements remained at the U.S. property. See id. at ¶¶ 18–19. The Deputy U.S. Marshal hand-delivered to Coleson a February 7, 2024 letter from the United States Attorney's Office. See id. at ¶ 18. The letter again told Coleson that the United States owned the U.S. property and directed Coleson to "prepare a plan of action to remove his real property improvements and personal property from the U.S. [p]roperty and to restore any damages." Id. The letter told Coleson "to submit that plan to the United States Attorney's Office and the Corps." Id. Moreover, the letter told Coleson that if he failed to comply, the United States would pursue appropriate legal action. See id. Coleson told the Deputy U.S. Marshal that he lives on the boat that he moors at the dock on the U.S. property and has no other residence or address. See id. at ¶ 19. Coleson also told the Deputy U.S. Marshal that he would contact the United States Attorney's Office about this matter. See id. at ¶ 20. Coleson failed to do so before the United States filed this action. See id.

## II.

"The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The notice requirement ensures the adverse party has "a fair opportunity to oppose the application and to prepare for such opposition." Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 432 n.7 (1974). Plaintiffs seeking a preliminary injunction must "demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013); see Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Centro Tepeyac v. Montgomery Cnty., 722 F.3d 184,

3

188 (4th Cir. 2013) (en banc). Courts consider each factor separately, and the movant must prove each factor "as articulated." Pashby, 709 F.3d at 320–21 (quotation omitted).

## A.

As for the United States' likelihood of success on the merits, under North Carolina law,[1] trespass is "a wrongful invasion of the possession of another." Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623, 627, 588 S.E.2d 871, 874 (2003) (quotation omitted); see State ex rel. Bruton v. Flying 'W' Enters., Inc., 273 N.C. 399, 415, 160 S.E.2d 482, 493 (1968); Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952) ("The essence of a trespass to [real property] is the disturbance of possession."); Elec. World, Inc. v. Barefoot, 153 N.C. App. 387, 393, 570 S.E.2d 225, 230 (2002). A claim of trespass to real property requires "(1) possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff." Singleton, 357 N.C. at 627, 588 S.E.2d at 874 (quotation omitted); see Fordham v. Eason, 351 N.C. 151, 153, 521 S.E.2d 701, 703 (1999); see, e.g., Elec. World, Inc., 153 N.C. App. at 393, 570 S.E.2d at 230; Jordan v. Foust Oil Co., 116 N.C. App. 155, 166, 447 S.E.2d 491, 498 (1994). Because "every unauthorized entry on land in the peaceable possession of another constitutes a trespass, without regard to the degree of force used and irrespective of whether actual damage is done," a complaint "states a cause of action for the recovery of nominal damages for a properly pleaded trespass to [real property] even if it contains no allegations setting forth the character and amount of damages." Matthews, 235 N.C. at 283, 69 S.E.2d at 555; see Keziah v. Seaboard Air Line R.R., 272 N.C. 299, 311, 158 S.E.2d 539, 548 (1968); Hutton & Bourbonnais v. Cook, 173 N.C. 496, 499, 92 S.E. 355, 356 (1917); Hawkins v.

---

[1] The United States argues that it is likely to succeed on the merits of its claims under North Carolina law. See [D.E. 5] 6–13. The court need not decide whether North Carolina law or federal common law governs the United States' claims. See id. at 7 n.1. The outcome is the same.

4

Hawkins, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991) (noting that trespass to real property is among the torts that "do not include actual damage as an essential element"), aff'd, 331 N.C. 743, 417 S.E.2d 447 (1992). Moreover, a defendant cannot assert adverse possession against the United States. See 28 U.S.C. § 2409a(n); Wilkins v. United States, 598 U.S. 152, 168 (2023) (Thomas, J., dissenting); Dunbar Corp. v. Lindsey, 905 F.2d 754, 760 (4th Cir. 1990); United States v. 7,405.3 Acres of Land in Macon, Clay & Swain Cntys., 97 F.2d 417, 422–23 (4th Cir. 1938).

The United States plausibly alleges it has continuously owned the U.S. property since 1913. See Compl. ¶¶ 8–10; [D.E. 1-1, 1-2]. The United States plausibly alleges that, during that time, Coleson entered and remained on the U.S. property. See Compl. ¶¶ 11–20; [D.E. 1-3, 1-6]. Although the United States need not plead damages, the United States' exhibits demonstrate that Coleson has damaged the U.S. property. See [D.E. 1-3, 1-6]. Accordingly, the United States is likely to prevail on its trespass claim.

As for the United States' private nuisance claim, under North Carolina law, plaintiffs seeking to recover for a private nuisance must show a substantial and unreasonable interference with the use and enjoyment of their property. See Kent v. Humphries, 303 N.C. 675, 677, 281 S.E.2d 43, 45 (1981); Morgan v. High Penn Oil Co., 238 N.C. 185, 193–94, 77 S.E.2d 682, 689 (1953); Barrier v. Troutman, 231 N.C. 47, 49–50, 55 S.E.2d 923, 925 (1949); BSK Enters., Inc. v. Beroth Oil Co., 246 N.C. App. 1, 24–25, 783 S.E.2d 236, 252 (2016); Shadow Grp., LLC v. Heather Hills Home Owners Ass'n, 156 N.C. App. 197, 200, 579 S.E.2d 285, 287 (2003); Jordan, 116 N.C. App. at 167, 447 S.E.2d at 498; Grant v. E.I. du Pont de Nemours & Co., No. 4:91-CV-55, 1995 WL 18239435, at *5 (E.D.N.C. July 14, 1995) (unpublished). An interference is substantial when it results in significant annoyance, some material physical discomfort, or injury

5

to plaintiffs' health or property. See Watts v. Pama Mfg. Co., 256 N.C. 611, 617, 124 S.E.2d 809, 813–14 (1962); Pake v. Morris, 230 N.C. 424, 426, 53 S.E.2d 300, 301 (1949); Duffy v. E.H. & J.A. Meadows Co., 131 N.C. 31, 34, 42 S.E. 460, 461 (1902); Shadow Grp., LLC, 156 N.C. App. at 200; 579 S.E.2d at 287. Reasonableness is judged by an objective standard and balances the relative benefit to defendant and harm to plaintiff. See Pendergrast v. Aiken, 293 N.C. 201, 217, 236 S.E.2d 787, 797 (1977) (listing factors); Watts, 256 N.C. at 618, 124 S.E.2d at 814 (same); Rainey v. St. Lawrence Homes, Inc., 174 N.C. App. 611, 613–14, 621 S.E.2d 217, 220 (2005).

The United States plausibly alleges it has continuously owned the U.S. property since 1913. See Compl. ¶¶ 8–10; [D.E. 1-1, 1-2]. The United States plausibly alleges that, during that time, Coleson entered and remained on the U.S. property. See Compl. ¶¶ 11–20; [D.E. 1-3, 1-6]. Coleson has damaged the U.S. property by placing personal property and debris on the U.S. property, and the United States will have to repair and clean up the U.S. property. See Compl. ¶ 48; [D.E. 1-3, 1-6]. Accordingly, the United States is likely to prevail on its private nuisance claim. See, e.g., BSK Enters., Inc., 246 N.C. App. at 24–26, 783 S.E.2d at 252–53.

As for the United States' public nuisance claim, "[a] public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights." State v. Everhardt, 203 N.C. 610, 617, 166 S.E. 738, 741–42 (1932) (quotation omitted); see Twitty v. State, 85 N.C. App. 42, 49, 354 S.E.2d 296, 301 (1987). "A public nuisance affects the local community generally and its maintenance constitutes an offense against the State." Twitty, 85 N.C. App. at 49, 354 S.E.2d at 301. "Whatever tends to endanger life, or generate disease, and affects the health of the community . . . is generally, at common law, a public nuisance." Everhardt, 203 N.C. at 618, 166 S.E. at 742. Public nuisances include construction of

6

improvements that obstruct public waterways or interfere with navigation on public waterways. See, e.g., Gaither v. Albemarle Hosp., 235 N.C. 431, 445, 70 S.E.2d 680, 692 (1952).

The United States plausibly alleges that Coleson has left debris and waste on public land and obstructed a public roadway with his vehicles. See Compl. ¶¶ 11–12, 41–42; [D.E. 1-3, 1-6]. Moreover, the United States plausibly alleges that Coleson has obstructed a public waterway by constructing a dock and mooring a boat. See Compl. ¶¶ 12, 17, 19, 46; [D.E. 1-3, 1-6]. Accordingly, the United States is likely to prevail on its public nuisance claim. See Gaither, 235 N.C. App. at 445, 70 S.E.2d at 692.

## B.

As for whether the United States is likely to suffer irreparable harm, "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction." Winter, 555 U.S. at 22 (emphasis in original). "As a general rule, interference with the enjoyment or possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute." Pelfresne v. Village of Williams Bay, 865 F.2d 877, 883 (7th Cir. 1989); see, e.g., Marfork Coal Co. v. Smith, No. 5:10-cv-69, 2010 WL 742560, at *5 (S.D.W. Va. Feb. 26, 2010) (unpublished).

The United States plausibly alleges it has continuously owned the U.S. property since 1913. See Compl. ¶¶ 8–10; [D.E. 1-1, 1-2]. The United States plausibly alleges that, during that time, Coleson entered and remained on the U.S. property. See Compl. ¶¶ 11–20; [D.E. 1-3, 1-6]. Coleson has rebuffed opportunities to voluntarily leave the U.S. property. See Compl. ¶¶ 14, 16, 18; [D.E. 1-4, 1-5]. The United States plausibly alleges Coleson has damaged the U.S. property by placing personal property and debris on the U.S. property, and the United States will have to repair and clean up the U.S. property. See Compl. ¶ 48; [D.E. 1-3, 1-6]. Accordingly, the United

7

States is likely to suffer irreparable harm absent a preliminary injunction. See, e.g., United States v. Wilson, No. 3:09-CV-166, 2010 WL 1849338, at *2 (D. Nev. May 6, 2010) (unpublished); C.J. Chadwick & Assocs., LLC v. Chadwick, 897 S.E.2d 923, 2024 WL 927418, at *4, *6 (N.C. Ct. App. Mar. 5, 2024) (unpublished table decision).

## C.

As for the balance of hardships and the public interest, these factors tip in the United States' favor where the defendant "has no lawful interest in the subject property . . . [and] deprives [the United States] of enjoyment of its lawful interest in the subject property." Wilson, 2010 WL 1849338, at *2. Moreover, these factors weigh in favor of the United States when an injunction aids "the federal government's stewardship of federal property." Id.

As discussed, the United States plausibly alleges it owns the U.S. property, and Coleson does not have a legal interest in the U.S. property. See Compl. ¶¶ 8–10; [D.E. 1-1, 1-2]. The United States plausibly alleges that Coleson has entered and remained on the U.S. property and put his personal property and debris on the U.S. property. See Compl. ¶¶11–20; [D.E. 1-3, 1-6]. Accordingly, the balance of hardships and the public interest weigh in favor of a preliminary injunction against Coleson. See, e.g., Wilson, 2010 WL 1849338, at *2.

## III.

In sum, the court GRANTS plaintiff's motion for a preliminary injunction [D.E. 4], EJECTS defendant from the U.S. property, and ENJOINS defendant from trespassing onto, encroaching on, causing a nuisance on, or damaging the U.S. property. Defendant SHALL remove his improvements and personal property from the U.S. property and fully cooperate and assist in the restoration of the U.S. property, including the removal of his improvements and personal property from the U.S. property and cleaning up the property.

8

SO ORDERED. This _3 ı_ day of May, 2024.

JAMES C. DEVER III
United States District Judge

**9**